UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARK FEUER,

                Plaintiff,

    -against-

STOLER OF WESTBURY, INC.,
WESTBURY TOYOTA, INC.,
STOLER WESTBURY, LLC,
LEONARD STOLER,
BARRY STOLER, AND
DAVID LEIBOWITZ,

                Defendants.
------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
20-CV-6094 (JMA) (JMW)

**FILED**
**CLERK**

3:18 pm, Oct 15, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Johnmack Cohen
Derek Smith Law Group, PLLC.
One Pennsylvania Plaza, Suite 4905
New York, NY 10119
    *Attorney for Plaintiff Mark Feuer*

Brian Jeffrey Schenker
Jackson Lewis P.C.
58 South Service Road, Suite 250
Melville, NY 11747
    *Attorney for Defendants Stoler of Westbury, Inc.,*
    *Westbury Toyota, Inc., Stoler Westbury Realty, LLC,*
    *Leonard Stoler, Barry Stoler, and David Leibowitz*

**AZRACK, United States District Judge:**

Plaintiff Mark Feuer ("Plaintiff") brings claims against defendants Stoler of Westbury, Inc., Westbury Toyota, Inc., Stoler Westbury Realty, LLC, Leonard Stoler, Barry Stoler, and David Leibowitz (collectively, "Defendants") under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the New York Human Rights Law ("NYSHRL"), the New York Labor Law ("NYLL"), and other causes of action under New York common law.

Defendants seek to compel arbitration and stay this action pursuant to the Federal Arbitration Act. (ECF No. 19.) During a pre-motion conference regarding Defendants' motion request, the Court informed the parties that their pre-motion letters would be construed as briefs. (ECF No. 22.) The Court afforded the parties the opportunity to supplement their positions, and both have done so. (ECF Nos. 23, 24, 25.) For the reasons set forth below, the Court **GRANTS** Defendants' motion to compel arbitration and stays this action.

## I. BACKGROUND

For purposes of the instant motion, the specific details of Plaintiff's claims are not relevant. Consequently, the Court sets forth only the factual background necessary to determine whether arbitration should be compelled.

When Plaintiff began his employment as General Manager of Westbury Toyota, he signed an arbitration agreement, dated November 25, 2011 (the "Agreement"). (ECF No. 24-1.) The Agreement addressed any legal claims that might arise over the course of his employment and provided:

> Employee [i.e., Plaintiff] agrees that all claims involving legally protected rights directly or indirectly related to Employee's recruitment, employment, or termination of employment by Westbury Toyota shall be settled by the Westbury Toyota internal grievance procedure, described below, and if unsuccessful, by the impartial binding arbitration, and that these are the sole, exclusive, final, and binding means for final resolution of such claims. This Agreement includes, but is not limited to, claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Americans With Disabilities Act, and Family and Medical Leave Act, any claim under any federal, state, or local law, regulation or ordinance regarding employment.[1]

---

[1] The Court can consider the Agreement because in deciding a motion to compel arbitration, the Court must apply a "standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003). In applying this standard, the Court is required to "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002). Such evidence includes the Agreement. See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Here, Plaintiff submitted the Agreement himself. (ECF No. 24-1.) It shows that he digitally signed the document on November 25, 2011, at 11:44 a.m., and he does not dispute signing it.

(Id.)  The Agreement also contained a choice-of-law provision, which stated that "all causes and controversies arising hereunder" shall be "interpreted, applied and enforced" by New York law. (Id.)  Additionally, it provided that "Employee[] also agrees that the obligation to arbitrate any dispute is fully enforceable under the Federal Arbitration Act, and the judgment upon the arbitration award rendered by the arbitrator(s) may be entered in any court having jurisdiction over such claims."  (Id.)  The entire basis of the parties' dispute in the instant motion is whether these provisions compel arbitration.

In his complaint, Plaintiff alleges that Defendants retaliated against him by cutting his pay and unlawfully terminating him based on his medical conditions.  (ECF No. 1.)  He brings claims for discrimination and retaliation under the ADA; interference and retaliation under the FMLA; discrimination, retaliation, and aiding and abetting under the NYSHRL; breach of contract, quantum meruit, unjust enrichment, and promissory estoppel under New York law; and a violation of the NYLL.  (Id.)

## II.   DISCUSSION

### A.  Applicable Law

The parties first dispute whether the Court should apply federal or state law to their dispute regarding arbitrability.  Defendants argue that the Federal Arbitration Act ("FAA") applies because the Agreement states "the obligation to arbitrate any dispute is fully enforceable under the Federal Arbitration Act."  (ECF No. 24-1.)  Plaintiff, however, contends that the Court should apply New York law because of the Agreement's choice-of-law provision, which states that "all causes and controversies arising hereunder" shall be "interpreted, applied and enforced" by New York law. (Id.)  Plaintiff argues that the Court should apply New York law, specifically CPLR § 7515, which

3

he says bars the arbitration of employment discrimination claims like the ones in his complaint. (ECF No. 21.)

CPLR § 7515 provides that "[e]xcept where inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain" a prohibited mandatory arbitration clause. N.Y. C.P.L.R. § 7515(i). A prohibited mandatory arbitration clause is any clause that "requires . . . that the parties submit to mandatory arbitration to resolve any allegation or claim of discrimination." Id. § 7515(a). This statute additionally provides that "[e]xcept where inconsistent with federal law, the provisions of such [a] prohibited clause . . . shall be null and void." Id. § 7515(b)(iii).

Several district courts in this circuit have squarely rejected Plaintiff's argument regarding the application of CPLR § 7515 based on a New York choice of law provision in an arbitration agreement. See, e.g., Lee v. Engel Burman Grande Care at Jericho, LLC, No. 20-CV-3093, 2021 WL 3725986, at *7 (E.D.N.Y. Aug. 23, 2021) ("[T]o the extent that Section 7515 does not itself carve out agreements that are subject to the FAA, Section 7515 'is displaced by the FAA.'"); Rollag v. Cowen Inc., No. 20-CV-5138, 2021 WL 807210, at *6 (S.D.N.Y. Mar. 3, 2021) ("Parties cannot contract their way out of the FAA's displacement of state-law prohibitions on the arbitration of particular types of claims. Simply put, NY CPLR § 7515 is displaced by the FAA in any 'arbitration agreement within the coverage of the Act.'"); White v. WeWork Companies, Inc., No. 20-CV-1800, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020), motion to certify appeal denied sub nom., 2020 WL 4383506 (S.D.N.Y. July 31, 2020) ("Since CPLR § 7515 is displaced by the FAA, Whyte may not rely on it to defeat WeWork's motion to compel arbitration. WeWork's motion to compel arbitration is GRANTED, and the pending action is stayed pursuant to 9 U.S.C. § 3."). The Court does so here as well.

4

B. **Standard Under the FAA**

The FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. § 4. The statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).

The Second Circuit has instructed that:

> In order to determine whether all or part of the instant action should be sent to arbitration, the Court must conduct the following inquiries: [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75–76 (2d Cir. 1998)).

C. **Application**

Applying the Second Circuit's test to the instant situation, the Court finds that arbitration is warranted, as set forth below.

1. Agreement to Arbitrate

First, the Agreement is clear that the parties agreed to arbitrate. "Whether or not the parties have agreed to arbitrate is a question of state contract law." Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012). New York law provides that "a party seeking arbitration need only prove

5

the existence of a valid arbitration agreement by a preponderance of the evidence." Couch v. AT&T Servs., Inc., No. 13-CV-2004, 2014 WL 7424093, at *3 (E.D.N.Y. Dec. 31, 2014). Here, in signing the Agreement, Plaintiff agreed to arbitrate any claim that fell within its scope. Indeed, he does not deny signing it, and he only argues that it is unenforceable under New York law.[2] Accordingly, the Court finds that the parties agreed to arbitrate.

In Plaintiff's supplemental letter, he argues that "[t]he agreement only applies to Westbury Toyota, Inc. and does not apply to Plaintiff's claims against Defendants Stoler of Westbury, Inc., Stoler of Westbury Realty, LLC, Leonard Stoler, Barry Stoler, and David Leibowitz" because these defendants, "aside from Westbury Toyota, Inc. are not parties to the agreement, nor covered by the terms of the agreement." (ECF No. 23 at 2.) In his complaint, though, Plaintiff alleges that the corporate entity defendants all "operate under the same corporate umbrella and ownership." (ECF No. 1 at ¶ 14.) In addition, he describes the individual defendants as holding corporate offices. (Id. at ¶¶ 17-22.)

Under certain circumstances, non-signatories to an arbitration agreement can "compel a signatory to that agreement to arbitrate a dispute." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 127-28 (2d Cir. 2010). They can do so based on the principle of equitable estoppel, following a two-part inquiry by the Court. "First, 'a careful review of the relationship among the parties, the contracts they signed . . ., and the issues that had arisen among them [must] disclose[] that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Alghanim v. Alghanim, 828 F.Supp.2d 636, 648

---

[2] At various points, Plaintiff characterizes the Agreement as "one-sided," (ECF No. 21), and a "non-negotiable contract of adhesion," (ECF No. 23). However, he does not argue that the Agreement is unenforceable on this basis and raises no legal arguments that it is unconscionable or was coerced. Even if he did, "[u]nder New York law, an arbitration provision that equally binds both parties to arbitration—as does the arbitration provision here—is not substantively unconscionable." Catz v. Precision Glob. Consulting, No. 19-CV-7499, 2021 WL 1600097, at *6 (S.D.N.Y. Apr. 23, 2021).

6

(S.D.N.Y. 2011) (quoting Ragone, 595 F.3d at 127 (internal quotations omitted)).  Second, "'there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" Id. (quoting Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008)).  In the employment context, "[s]uch a relationship has been found where the non-signatory is a parent company, corporate successor, guarantor, or corporate affiliate of a signatory, or where the non-signatory was a co-employer with a signatory and the claims arose from the employment agreement containing an arbitration clause."  Laumann v. Nat'l Hockey League, 989 F. Supp. 2d 329, 336 (S.D.N.Y. 2013) (citations omitted).

      Here, the non-signatory defendants readily meet both components of the two-step inquiry.  First, the issues that the non-signatory defendants are seeking to resolve in arbitration are intertwined with the Agreement that Plaintiff and Westbury Toyota, Inc. signed.  All of Plaintiff's claims against the non-signatories concern the "legally protected rights directly or indirectly related to Employee's recruitment, employment, or termination of employment," in the words of the Agreement. (ECF No. 24-1.)  Second, the relationship among the non-signatories as corporate parents, subsidiaries, and officers justifies the conclusion that Plaintiff should be estopped from denying an obligation to arbitrate with them.  Accordingly, the non-signatories can compel arbitration here.

      2.   Scope of the Agreement

      As to the second part of the Second Circuit's inquiry regarding arbitrability under the FAA, all of Plaintiff's claims concern what the Agreement describes as "legally protected rights directly or indirectly related to Employee's recruitment, employment, or termination of employment."

7

(ECF No. 24-1.) In addition, the Agreement specifically articulates claims under the ADA, the FMLA, and "any claim under any federal, state, or local law, regulation or ordinance regarding employment" as arbitrable. (Id.) As the Second Circuit has explained in interpreting similarly broad language, "[t]he clause in this case, submitting to arbitration 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995). In situations involving such broad clauses, like here, "there is a presumption of arbitrability . . . [and t]he Court will compel arbitration of even a dispute that does not implicate the contract's express provisions as long as 'the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.'" Catz, 2021 WL 1600097, at *8 (S.D.N.Y. Apr. 23, 2021) (quoting Collins & Aikman Prods. Co., 58 F.3d at 23). Here, Plaintiff's claims are covered by the Agreement's express provisions in that he brings claims regarding his "legally protected rights directly or indirectly related to [his] recruitment, employment, or termination of employment." (ECF No. 24-1.) Accordingly, the broad scope of the Agreement supports an order to compel arbitration.

    3. <u>Congressional Intent</u>

Finally, Plaintiff has advanced no evidence that Congress intended to preclude arbitration of his federal claims. As the party that opposes arbitration, Plaintiff bears the burden of showing legislative intent to preclude arbitration. Crawley v. Macy's Retail Holdings, Inc., No. 15-CV-2228, 2017 WL 2297018, at *5 (S.D.N.Y. May 25, 2017). He has not even attempted to do so here, and the Court is unaware of any authority that precludes arbitration of the specific claims in his complaint. Accordingly, the final step in the inquiry weighs in favor of compelling arbitration.

4. Cost-Sharing

Plaintiff's final argument in opposition to arbitration is that the "cost-splitting provision [of the Agreement] would undoubtedly impose significant costs upon Plaintiff well beyond the costs incurred by Plaintiff in exercising his rights in this judicial forum." (ECF No. 21 at 2-3.) In particular, the Agreement provides that the administrative fees and expenses of the arbitration, excluding attorney's fees and costs, "will be split equally between the employee and Westbury Toyota, Inc." (ECF No. 24-1.)

As the Supreme Court has explained, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000). "Whether arbitration is 'prohibitively expensive' depends on 'the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.'" Balderas v. 8 Chelsea Corp., No. 18-CV-11149, 2019 WL 3429500, at *2 (S.D.N.Y. July 29, 2019) (quoting Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002)). Here, the entirety of Plaintiff's argument is that "[a]rbitrating this matter in accordance with the above-outlined one-sided cost-splitting provision would undoubtedly impose significant costs upon Plaintiff well beyond the costs incurred by Plaintiff in exercising his rights in this judicial forum." (ECF No. 21.) Plaintiff provides no additional detail regarding how arbitration would be prohibitively more expensive than litigation of this matter in federal court. Moreover, Plaintiff's argument is undermined by Defendants' conveyance of an offer to Plaintiff to "unconditionally waive the enforcement of the provision requiring Plaintiff to

9

bear the arbitrator's fees." (ECF No. 25 at 3 n.1.) Accordingly, the Court rejects Plaintiff's cost-sharing argument and compels arbitration.

5. <u>Stay</u>

Because the Court grants the motion to compel arbitration, it also stays this action. <u>See Katz v. Cellco P'ship</u>, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

### III. CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration and stay this proceeding is hereby **GRANTED**. For administrative and statistical convenience, the Clerk of Court is instructed to administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[3]

**SO ORDERED.**

Dated: October 15, 2021
      Central Islip, New York

                                                                           /s/ (JMA)
                                                                          JOAN M. AZRACK
                                                                          UNITED STATES DISTRICT JUDGE

---

[3] <u>Rost v. Liberty Coca-Cola Beverages, LLC</u>, No. 20 CV 10559, 2021 WL 3723092, at *5 (S.D.N.Y. Aug. 23, 2021); <u>Zimmerman v. UBS AG</u>, 789 F. App'x 914, 915-16 (2d Cir. 2020) (summary order) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience." (citation omitted)).